# United States Court of Appeals
## For the First Circuit

No. 25-1351

LESVI LUCIA MONZON GUZMAN,

Petitioner,

v.

TODD BLANCHE,[*] Acting Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Aframe, Howard, and Dunlap,
Circuit Judges.

Jonathan Ng, Omar Rahman, Abdul Wahab Niaz, Bhuvanyaa Vijay, and Law Offices of Johanna M. Herrero, on brief for petitioner.
Christina R. Zeidan, Trial Attorney, Office of Immigration Litigation, Civil Division, Brett A. Shumate, Assistant Attorney General, Civil Division, and Lisa M. Arnold, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

August 7, 2026

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela J. Bondi as Respondent.

**AFRAME, Circuit Judge.**  Lesvi Lucia Monzon Guzman is a Salvadoran citizen.  She brings a petition for review challenging the Board of Immigration Appeals's ("BIA") dismissal of her appeal from an immigration judge's ("IJ") denial of her application for asylum and withholding of removal pursuant to the Immigration and Nationality Act.  Monzon argues, inter alia, that the BIA wrongly concluded that there was no nexus between her claims of persecution and a statutorily protected ground.  Because substantial evidence supports the BIA's no-nexus conclusion, we deny the petition.

## I.

### A.

Monzon entered the United States on May 15, 2015.  On July 31, 2017, Immigrations and Customs Enforcement ("ICE") encountered and arrested her.  The Department of Homeland Security issued Monzon a Notice to Appear the next day and initiated removal proceedings.  A few months later, on October 9, 2017, Monzon applied for asylum, withholding of removal, and CAT protection.[1]  In her application, Monzon explained that she feared harm from her sister's former romantic partner and that she was not aware she had to file for asylum within a year of her arrival in the United States.

---

[1]  The application was formally filed with the IJ on January 2, 2020.

Monzon submitted sworn affidavits and testified in support of her claims before the IJ, who found her to be credible. We summarize that evidence here. See Barnica-Lopez v. Garland, 59 F.4th 520, 525 n.1 (1st Cir. 2023) (noting that we draw the facts from the administrative record).

While living in El Salvador, Monzon was robbed three times. The first robbery occurred in June 2014, when two gang members held Monzon at knifepoint on a bus and proceeded to take her money and phone. The second robbery occurred in December of that year, when a gang member took Monzon's cell phone while she walked home. The final robbery took place a month later, in January 2015, at a shopping center. Monzon was shopping for a new cell phone card when armed gang members robbed the store and all its customers. During that robbery, one gang member pointed a gun at Monzon's head and threatened her by asking "[d]o you want us to kill you, bitch?" Monzon acknowledged that her experiences were not unique, as gangs commonly rob people in El Salvador.

Monzon did not report any of the robberies she experienced to the police because she knew people who had been retaliated against by the gangs after making such reports and because she believes the police in El Salvador never arrest gang members. Soon after, Monzon decided to leave for the United States and entered the country without inspection on May 15, 2015.

In December 2016, over a year and a half after Monzon's entry, Monzon's then-five-year-old niece was sexually assaulted by the niece's father, Juan Carlos Campos Jurado, in El Salvador. Campos was in a relationship with Monzon's sister, Karen. When Karen called Monzon to tell her about the assault, Monzon insisted that Karen report Campos to the police. Campos was a "dangerous and violent man" whose uncle was a member of the MS-13 gang. After Karen reported Campos to the authorities, Campos's uncle initiated him into MS-13 for his protection. Campos threatened Karen, Karen's daughters, and Monzon because of Karen's report. Karen and her daughters then joined Monzon in the United States. Meanwhile, Campos continued to threaten Monzon and Karen through social media.

Later, when asked by the government why she did not file her asylum application until October 9, 2017, when the events surrounding her niece's sexual assault had occurred in December 2016, Monzon said it was because she "hadn't had any problems with immigration" authorities when the events involving Campos took place.

**B.**

As is pertinent to this appeal, the IJ rejected Monzon's claims for asylum and withholding of removal but did not address

- 4 -

her humanitarian asylum claim.[2]  The IJ concluded that the asylum claim failed for two independent reasons.  First, the IJ determined Monzon's asylum application was time-barred.  Second, the IJ found that Monzon had failed to establish a nexus between the violence and threats she faced and a protected category because (1) the violence Monzon endured in El Salvador was motivated by the perpetrators' desire to obtain property from her, such as her money and phone, rather than because of Monzon's membership in a particular social group, and (2) there was insufficient evidence to characterize her niece's sexual assault as anything other than "an odious crime of interpersonal violence."  The IJ also rejected Monzon's withholding of removal claim because (1) it too required persecution to be on account of a protected ground and (2) had a more stringent standard than asylum.

Monzon appealed to the BIA.  Among other claims, she argued that the IJ failed to conduct a "mixed motive" analysis when assessing whether a nexus existed between the harms identified and a statutorily protected ground.  According to Monzon, even if none of the statutorily protected grounds she identified were the sole reason for the asserted harm, at least one was a central

_____

[2]      The IJ also denied Monzon CAT protection because she failed to show that it was more likely than not that she would be tortured upon her return to El Salvador.  Monzon has not presented a developed argument in this Court about the CAT claim, so we do not discuss it further.  See Yong Gao v. Barr, 950 F.3d 147, 154 (1st Cir. 2020) (deeming undeveloped CAT argument waived).

- 5 -

reason.  The BIA rejected this argument, stating that Monzon failed to show that a protected ground was a central reason for the conduct about which she complained.  The BIA also denied Monzon's humanitarian asylum claim for the same reason.

## II.

In her petition, Monzon argues that the BIA (1) erroneously concluded that her asylum application was untimely and (2) did not conduct a proper mixed-motive analysis when it concluded that there was no nexus between the alleged persecution and a protected category.  We bypass the timeliness claim because the BIA's supportable no-nexus ruling is dispositive.

In circumstances such as this, where "the BIA accepts the IJ's findings and reasoning yet adds its own gloss, [this Court will] review the two decisions as a unit."  Xian Tong Dong v. Holder, 696 F.3d 121, 123 (1st Cir. 2012); see Zaruma-Guaman v. Wilkinson, 988 F.3d 1, 5 (1st Cir. 2021) ("In this case, the BIA relied largely on the IJ's decision.  Following a well-beaten path, we treat the BIA's decision and the IJ's decision as a unit in connection with our review.").  We refer to the BIA and the IJ collectively as the "agency."

We review the BIA's "legal conclusions de novo" and the agency's "findings of fact under the 'substantial evidence' standard."  Aguilar-Escoto v. Garland, 59 F.4th 510, 515 (1st Cir. 2023) (quoting second Xin Qiang Liu v. Lynch, 802 F.3d 69, 74 (1st

- 6 -

Cir. 2015)). We consider the determination that there was no nexus between the complained-of conduct and a protected category under the substantial evidence standard. See De La Cruz-Quispe v. Bondi, 161 F.4th 17, 23 (1st Cir. 2025). Under that standard, we "defer to the BIA's findings of fact 'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Ruiz v. Mukasey, 526 F.3d 31, 35 (1st Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III.

To obtain asylum, an applicant "must prove either past persecution, which gives rise to an inference of future persecution, or establish a well[-]founded fear of future persecution on account of her race, religion, nationality, membership in a social group, or political opinion." Hem v. Mukasey, 514 F.3d 67, 69 (1st Cir. 2008). The protected ground must be "at least one central reason" for the persecution. Esteban-Garcia v. Garland, 94 F.4th 186, 192 (1st Cir. 2024) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "The 'one central reason' test allows for 'the possibility that multiple motivations can exist' for persecution." Lopez-Martinez v. Blanche, 173 F.4th 362, 369 (1st Cir. 2026) (quoting Khalil v. Garland, 97 F.4th 54, 62 (1st Cir. 2024)). However, while multiple motivations can exist, "the protected ground must be more than 'incidental, tangential, superficial, or subordinate to another reason for [the] harm' to qualify as 'one central reason.'" Barnica-Lopez,

- 7 -

59 F.4th at 531 (quoting Sanchez-Vasquez v. Garland, 994 F.3d 40, 47 (1st Cir. 2021)).

Monzon contends that the agency wrongly disregarded evidence that she was persecuted because of her gender, familial ties, and political opinions.[3] We address these contentions in turn.

According to Monzon, the robber's use of the slur "bitch" during the January 2015 robbery demonstrates a gender-based motive. However, the record supports the agency's conclusion that the only reason, central or otherwise, that Monzon was targeted by gang members during those robberies was for financial gain. Each time Monzon was robbed, the gang members wanted items of pecuniary value -- such as her money and phone -- which does not support the notion that Monzon was targeted based on a protected ground. See Lopez-Castro v. Holder, 577 F.3d 49, 54 (1st Cir. 2009) ("Threats 'motivated . . . by greed' lack adequate nexus to any statutorily

_____

[3] Monzon also claims that the BIA incorrectly evaluated the merits of her asylum claim under the 'clear error' standard of review instead of reviewing it de novo. We disagree. The BIA is entitled to a presumption of regularity in its proceedings such that "it need not recite the familiar incantations 'clear error' or 'de novo' in reaching its decision." Leao v. Bondi, 144 F.4th 43, 52 (1st Cir. 2025). In any event, the BIA correctly stated that it reviews "for clear error the findings of fact . . . [and] . . . de novo questions of law . . . ." Additionally, because other portions of the BIA opinion clearly express when it is applying clear error review, we can safely assume the BIA reviewed de novo the merits of Monzon's asylum claim.

protected ground." (quoting Ruiz, 526 F.3d at 36-37). Furthermore, during the third robbery, the robbers targeted the store and robbed every customer, not just Monzon. See Matter of M-E-V-G, 26 I. & N. Dec. 227, 235 (BIA 2014) ("[A]sylum and refugee laws do not protect people from general conditions of strife, such as crime and other societal afflictions."). On this evidence, the fact that the robber used a gendered pejorative during the commission of one robbery is not enough to compel the conclusion that gender was a central reason for Monzon being harmed.

Monzon next argues that Campos, an MS-13 gang member, targeted her because she is related to Karen. However, the record supports the agency's conclusion that Monzon's familial ties are not a reason for the harm inflicted by Campos. Specifically, the record shows that Campos targeted Monzon to seek revenge. Monzon urged Karen to report Campos to the police, and Campos was aware of that fact. Campos only started to threaten Monzon "when he found out that [she] . . . was the one who convinced [Karen] to report him." This timing supports the BIA's conclusion that Campos was motivated by his anger toward Monzon for encouraging Karen to report him to the authorities. See Marín-Portillo v. Lynch, 834 F.3d 99, 101-103 (1st Cir. 2016) (finding no nexus where revenge, not familial ties, was the primary motivation for the asserted persecution in part because the perpetrator knew the petitioner had taken steps to hold the perpetrator accountable for his

crimes).  This conclusion is bolstered by the fact that Karen and Monzon have other family members still living in El Salvador whom Campos has not harmed, suggesting that familial ties to Karen or her niece are not at the root of the asserted persecution.  See Penafiel-Peralta v. Garland, 115 F.4th 1, 10 (1st Cir. 2024) ("For family membership to serve as the required statutorily protected ground, it must be at the root of the persecution, so that family membership itself brings about the persecutorial conduct." (citation modified)).

Finally, Monzon asserts that her political beliefs are another central reason for her persecution.  She claims to hold an anti-gang, pro-rule-of-law political opinion and believes that men should be held accountable for sexual crimes.  However, Monzon has alleged only that she was subjected to economic crime and is being threatened by Campos.  For the reasons already explained, the record supports the conclusion that neither Monzon's victimization by economic crime nor Campos' threats are connected to her ideological opposition to gangs.  See Lopez-Martinez, 173 F.4th at 369 (noting that political opinion claims require the applicant to prove that the persecution was because of that political belief).  Indeed, when Monzon originally drew Campos's ire by urging Karen to report him to the police, Campos was not yet a member of the MS-13 gang.

- 10 -

Monzon also makes claims of future persecution based on her gender, familial ties, and political views. Like her claims of past persecution, Monzon's fears of future persecution are largely centered on Campos and widespread criminal activity in El Salvador. For the same reasons stated previously, Monzon has failed to demonstrate a connection between any well-founded fear of future persecution and a statutorily protected group. Monzon's generalized claims about conditions in El Salvador without specific connections to her own well-founded fears of persecution are inadequate to compel a finding in her favor. See, e.g., Cano-Gutierrez v. Bondi, 146 F.4th 26, 33 (1st Cir. 2025) (finding reliance on generalized facts about country conditions insufficiently particularized to establish nexus).

Monzon's failure to demonstrate nexus means that her asylum claim fails.[4] Accordingly, Monzon's withholding of removal claim also fails because it likewise requires a showing of nexus. See Pan v. Gonzales, 489 F.3d 80, 85-86 (1st Cir. 2007). The burden of proof for withholding of removal is also higher than it

---

[4] Monzon claims that the agency committed error requiring remand when it neglected to clarify whether the severity of harm that she experienced amounted to past persecution. This claim fails because in asylum cases, the lack of nexus is dispositive. See 8 U.S.C. § 1101(a)(42)(A) (mandating the persecution be "on account of" a protected ground); see also Marín-Portillo, 834 F.3d at 101-03 (denying asylum solely due to lack of nexus and explicitly stating that the severity of the petitioner's harm need not be addressed).

is for asylum.  See id.  ("This 'more likely than not' standard is harder . . . to satisfy than the 'reasonable possibility' standard . . . in asylum cases.").[5]

We conclude by addressing Monzon's claim for humanitarian asylum.  Monzon claims that the IJ's failure expressly to address her humanitarian asylum claim constitutes legal error warranting remand.  However, when the IJ has found there is no nexus establishing persecution, it need not reach the question of the applicant's humanitarian asylum.  See De La Cruz-Quispe, 161 F.4th at 22 n.2.

Absent a well-founded fear of persecution, an applicant may still be granted humanitarian asylum.  8 C.F.R. § 1208.13(b)(1)(iii).  The applicant must demonstrate either "compelling reasons for being unwilling or unable to return . . . arising out of the severity of the past persecution" or "that there is a reasonable possibility that he or she may suffer other serious harm upon removal . . . ."  Id. §§ (b)(1)(iii)(A), (B).  Persecution is a prerequisite to qualify for humanitarian asylum under either method.  See Martínez-Pérez

---

[5]    "There is a circuit split regarding whether the 'one central reason' test applies to withholding of removal claims or whether a more lenient 'a reason' standard applies." Lopez-Martinez, 173 F.4th 362, 369 n.6 (quoting Pineda-Maldonado v. Garland, 91 F.4th 76, 90 n.5 (1st Cir. 2024)).  We need not resolve the issue here because the record supports the BIA's conclusion that the protected grounds Monzon proffered were not reasons for her harm at all.

v. Sessions, 897 F.3d 33, 42 (1st Cir. 2018) (determining that "subsection (b)(1)(iii) d[id] not apply" because the petitioner "failed to show . . . persecution"). That persecution must be "on account of a protected ground." De La Cruz-Quispe, 161 F.4th at 22 n.2. Because Monzon was unable to show the nexus necessary to establish persecution, she cannot qualify for humanitarian asylum.[6]

**IV.**

For these reasons, we **deny** the petition.

---

[6]    At the close of her brief, Monzon argues she was denied due process because the agency used incorrect legal standards and summarily denied her relief, warranting remand. This claim is largely a repackaging of her prior claims and fails for the reasons already discussed.